IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JOE A. DEL CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-04-01 |
| | § | |
| DR. KELLY CARMICHAEL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Joe A. del Castillo, a former inmate of the Texas Department of Criminal Justice - Criminal Institutions Division (TDCJ-CID), filed a suit under 42 U.S.C. § 1983 against TDCJ-CID employees and health care workers (Kelly Carmichael MD, Edgar Hulipas MD, Jason Norcross MD, Chris English PA, Jenny Abraham PA, William Shelby PA, Mary Tucker RN, and Warden R. Trinci) regarding their alleged deliberate indifference to his serious health needs. The defendants were served and filed motions for dismissal. They also moved for a Rule 7(a) reply and a stay of discovery. The court granted the motions to dismiss in part, and all official capacity claims were dismissed as baseless. In addition, all claims against Carmichael, Norcross, and Trinci in their individual capacities were dismissed as legally baseless and Carmichael, Norcross, and Trinci were terminated as defendants in this action.

The court also granted the defendants' motion for del Castillo to replead and ordered del Castillo to submit answers to the court's questions within thirty days. Del Castillo has submitted his answers (Docket Entry No. 26) and, pursuant to the liberal standards of interpretation under *Haines v. Kerner,* 92 S.Ct. 594 (1972), the court finds that the responses indicate that Hulipas, English, Abraham, Shelby, and Tucker were deliberately indifferent to del Castillo's serious medical needs.

## I. Summary of Allegations

Del Castillo's claims have been reviewed and analyzed as set forth in a prior Memorandum and Order (Docket Entry No. 25) and remain essentially the same although he has now set forth more allegations in support of his claims. Therefore, this section will review the additional and salient facts alleged. This action concerns medical treatment provided with regard to del Castillo's separated left clavicle during his incarceration in the TDCJ-CID. Surgeons at the John Sealy Hospital in Galveston operated on del Castillo to correct his condition in January of 2003. He was later discharged from the hospital with a prescription for pain medication and instructions to return him immediately to the hospital if any complications arose. A few weeks later, del Castillo discovered a knot where the re-separated clavicle was protruding up into the skin of his left shoulder. On that same day and afterwards, he reported the failure to TDCJ-CID and UTMB officials and added that he was experiencing pain as a result. Del Castillo alleges that none of the defendants helped him despite his obvious injury and distress.

On or about January 31, 2003, PA Abraham (Abrams, *see* Docket Entry No. 26 at 4) refused to allow the nurse in charge of dispensing medications to issue pain medication to del Castillo even though his prescription was still valid. She purportedly also told him that she would not contact a doctor to authorize the medication. Abraham also refused to see del Castillo on several other occasions and offered no explanation for her lack of action despite the fact that she was aware that he had recently had an operation.

On February 4, 2003, del Castillo sought help at the infirmary. Although del Castillo was in apparent pain and had explained to Nurse Tucker on several occasions that something had gone wrong with the operation, she refused to treat him and threatened to place him in solitary confinement if he did not leave the area. Allegedly, Tucker's only explanation was that the

attending PA had too many patients. On that same date, PA Shelby refused to see del Castillo saying that he was too busy.

Del Castillo was scheduled to be returned to John Sealy Hospital on February 7, 2003; however, Dr. Hulipas refused to send him and instead ordered x-rays which were taken on February 10, 2003. Although the x-rays revealed the operation had failed, Dr. Hulipas still refused to allow del Castillo to go to the hospital and ordered a reduction of del Castillo's pain medication.

On February 18, 2003, Dr. Allen of the UTMB Tele-medicine Clinic scheduled del Castillo for a visit to the Galveston Orthopedic Clinic and increased his medication to treat his pain and elevated blood pressure. However, Dr. Hulipas did not comply with Dr. Allen's instructions although he was aware that del Castillo had been in pain for more than two weeks. Moreover, Dr. Hulipas refused to send del Castillo back to Galveston despite his obvious injury and his discharge papers which indicated that a return had been ordered in the event that complications arose.

On March 3, 2003, del Castillo met with PA English, one of the health care workers who assisted in the operation. English ordered x-rays and quickly ascertained that the operation had failed but took no action other than to order more Tylenol # 3 for del Castillo and inform him that they would see him in a couple of months and do another operation if necessary. English then returned del Castillo back over to the custody of the TDCJ-CID guards.

## II. Analysis

In order for a prisoner to establish a constitutional violation of his civil rights regarding medical care, he must show that the defendant prison official was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 97 S.Ct. 285, 292 (1976). To do this, the prisoner must present facts which demonstrate that the official was aware of an excessive risk to his health or

safety and that the defendant purposely disregarded or ignored the risk.  *Farmer v. Brennan,* 114 S.Ct. 1970, 1979 (1994).

Del Castillo has asserted a serious need in that he alleged that he had undergone an operation which was clearly unsuccessful.  *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) ("A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  In some instances where the defendants are guards and have no formal medical training, ignoring an inmates' plight might be excused.  *See Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992) (guard, unaware of extent of injury, forced inmate with fractured ankles to walk between 150 and 440 yards to infirmary).  Custodial officials are entitled to rely on the expertise of trained health care providers to assess and respond to prisoner's health and safety needs.  *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).  However, the defendants in this action are health professionals and del Castillo's purported medical history as well as his condition would have alerted them to his need for help.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  It is possible that a full disclosure of del Castillo's medical records will prove that he was provided basic treatment after his operation and that the defendants were not deliberately indifferent to his medical needs.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).  At this time though, the court finds that del Castillo has continued with his allegations of deliberate indifference to his serious medical needs and has provided sufficient facts to support such a claim against the remaining defendants.  Therefore, the remaining defendants will be ordered to file a motion for summary judgment supported by del Castillo's medical records and del Castillo must file a response to any dispositive motion filed by the defendants.

### III. Conclusion

The court **ORDERS** the following:

1. The civil rights claims brought against defendants Hulipas, Tucker, Shelby, English, and Abraham in their individual capacities are **RETAINED**.

2. The defendants shall file a motion for summary judgment no later than thirty (30) days after the date of this Memorandum Opinion and Order.

3. The defendants shall also submit a business records affidavit along with copies of any documents relevant to the plaintiff's claims and the defendants' defenses.

4. If the defendants fail to file a motion for summary judgment or other appropriate dispositive motion within the thirty (30) day time limit, they shall file an advisory with the court regarding the reasons why a dispositive motion was not filed in this case. Such advisory must be filed within forty-five (45) days of the date of this Memorandum Opinion and Order.

5. If the defendants file a motion for summary judgment or other dispositive motion, the plaintiff is **ORDERED** to file a response within thirty (30) days of the date the defendants mailed the plaintiff his copy of the motion, as shown on the defendants' certificate of service. The plaintiff's failure to file a response within thirty days shall result in dismissal of this action for want of prosecution under Rule 41(b), FED. R. CIV. P

6. The Clerk shall deliver a copy of this Order to the parties, **by certified mail, return receipt requested**.

**SIGNED** on this 27th day of March, 2007.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE