IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JOE A. DEL CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-04-01 |
| | § | |
| DR. KELLY CARMICHAEL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Joe A. del Castillo, a former inmate of the Texas Department of Criminal Justice - Criminal Institutions Division (TDCJ-CID), filed a suit under 42 U.S.C. § 1983 against TDCJ-CID employees and health care workers alleging deliberate indifference to his serious health needs. The court previously dismissed part of the claims and ordered the remaining defendants (Edgar Hulipas, M.D., Chris English, P.A., Jenny Abraham, P.A., William Shelby, P.A., and Mary Tucker, R.N.) to file a Motion for Summary Judgment. The defendants have submitted a motion (Docket Entry No. 37) which is supported by records and sworn statements. After reviewing the pleadings and evidence, the court will **GRANT** the defendants' motion and **DISMISS** this action for the reasons set forth below.

### I. Del Castillo's Claims and Procedural History

This action concerns medical treatment provided to del Castillo while he was incarcerated. The court has previously analyzed the issues and has dismissed those claims which were legally baseless. *See* Docket Entry Nos. 25 and 27. In summary, del Castillo entered the TDCJ-CID with a left clavicle or collarbone which was separated from his left shoulder and the staff at the University

of Texas Medical Branch (UTMB) performed an operation to correct this condition.  However, the procedure used proved to be inadequate and the sutures used to correct del Castillo's condition subsequently failed.  Del Castillo filed the complaint in this action alleging that he suffered great pain after the operation and claiming that he was denied adequate medical care in violation of the Eighth Amendment during the operation and during the treatment he received after the operation. The court dismissed the claims regarding the operation itself noting that the alleged facts demonstrated that the defendants did not deliberately ignore del Castillo's condition although those involved in the operation may have been grossly negligent in treating del Castillo's injury.  *See Hare v. City of Corinth, Miss*., 74 F.3d 633, 697-98 (5th Cir. 1996).  However, the court retained del Castillo's claims that he was denied adequate treatment after the operation in that defendants ignored his need for medical help when it became apparent that the operation was not a success and that further treatment was needed.  Del Castillo's allegations are set forth below.

On February 3, 2003, eighteen days after his discharge from the hospital, del Castillo realized that the operation had failed when he discovered a knot where the re-separated clavicle was protruding up into the skin of his left shoulder.  On that same day, he reported the failure to TDCJ-CID and UTMB officials and added that he was experiencing pain as a result.  Despite the fact that del Castillo filed numerous grievances detailing his worsening condition and resultant discomfort, Defendants Dr. Edgar Hulipas, Nurse Mary Tucker, PA William Shelby, PA Jenny Abraham, and Warden R. Trinci responded with deliberate indifference to his complaints for more than two months.

Del Castillo specifically alleges that he sought help at the infirmary on February 4, 2003, but Nurse Tucker refused to treat him and threatened to place him in solitary confinement if he did not leave.  PA Abraham also refused to examine or see del Castillo on several occasions.  The first x-

rays, which were taken on February 10, 2003, revealed the failure. Del Castillo complains that Warden Trinci refused to investigate his grievances and instead deferred to Dr. Hulipas's response which indicated that del Castillo had been treated and had continually received pain medication since the operation. Del Castillo disputed Dr. Hulipas's statements and asserted Dr. Hulipas discontinued his medications despite his obvious discomfort.

On February 18, 2003, Dr. Allen of the UTMB Tele-medicine Clinic scheduled del Castillo for visit to the Galveston Orthopedic Clinic and increased his medication to treat his pain and elevated blood pressure. However, Dr. Hulipas did not comply with Dr. Allen's instructions although he was aware that del Castillo had been in pain for more than two weeks. Moreover, Dr. Hulipas refused to send del Castillo back to Galveston despite his obvious injury and his discharge papers which indicated that a return had been ordered in the event that complications arose.

On March 3, 2003, del Castillo met with PA English, one of the of the health care workers who assisted in the operation. While not explaining why the alternative procedure was used, English told del Castillo that there would be another operation, if necessary in two or three months. However, no such operation occurred throughout the remainder of that year. Del Castillo contends that he has needlessly suffered because of the defendants' actions and that he seeks injunctive relief and monetary compensation for his pain and suffering.

## II. Defendants' Arguments and Supporting Evidence

The defendants argue that del Castillo's records do not support his allegations that they were deliberately indifferent to his serious medical needs. They contend that del Castillo's records show that they provided reasonable medical care to del Castillo and responded to his requests for attention. In support of their arguments, the defendants have submitted the following records:

Exhibit A:   The University of Texas Medical Branch Hospitals Operative Report

3

        dated 1/16/2003

Exhibit B:    UTMB-Galveston Physician Order Sheet dated 1/16/2003 - Discharge Prescription

Exhibit C:    The University of Texas Medical Branch Hospitals Galveston, TX Final Discharge Note dated 1/16/2003

Exhibit D:    The University of Texas Medical Branch Hospitals Galveston, TX Outpatient Clinic Notes dated 1/30/2003

Exhibit E:    The University of Texas Medical Branch Hospitals Galveston, TX Outpatient Clinic Notes dated 2/18/2003

Exhibit F:    The University of Texas Medical Branch Hospitals Galveston, TX Outpatient Record TDCJ Hospital and Plan of Care Recommendations

Exhibit G:    The University of Texas Medical Branch Hospitals Galveston, TX Outpatient Record TDCJ Hospital and Plan of Care Recommendations

Exhibit H:    Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/6/2003

Exhibit I:    UTMB Managed Care Clinic Notes - Physician dated 2/7/2003

Exhibit J:    Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/10/2003

Exhibit K:    Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/11/2003

Exhibit L:    Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/12/2003

Exhibit M:    Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/14/2003

Exhibit N:    UTMB Managed Care Clinic Notes-Physician dated February 14, 2003

Exhibit O:    Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/16/2003

Exhibit P:     UTMB Managed Care-Clinic Notes-Physician dated February 18, 2003

Exhibit Q:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/18/2003

Exhibit R:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/19/2003

Exhibit S:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/24/2003

Exhibit T:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/24/2003

Exhibit U:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 2/26/2003

Exhibit V:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 3/4/2003

Exhibit W:     Texas Department of Criminal Justice, Health Services Division Sick Call Request dated 3/9/2003

Exhibit X:     Texas Department of Criminal Justice, Health Services Division Sick Call Requests dated 9/14/2003 and 10/18/2003

Exhibit Y:     Various Medical Reports reflecting five visits to medical personnel regarding del Castillo's shoulder

Exhibit Z:     Affidavit of Shantel Humphrey dated May 3, 2007 authenticating Exhibit X as official copies of medical records at the TDCJ Health Services Archives.

Exhibit AA:    Affidavit of Jane I. Loose, custodian of records for UTMB, dated March 26, 2004 authenticating Exhibits A-G as copies of UTMB business records.

Exhibit BB:    Affidavit of Adlaida Y. Wade, Clinical Records Administrator/Medical Stevenson Unit at TDCJ, dated March 18, 2004 authenticating Exhibit Y as true copies of the original TDCJ business records.

The records show that on January 16, 2003, UTMB surgeons performed a reconstruction operation on del Castillo's shoulder. Exhibit A. He was then returned to TDCJ-CID's custody with

prescribed medications, including Tylenol No.3 with Codeine which was to be taken by mouth every four to six hours for pain, and instructions to keep his arm immobilized at all times.  Exhibits B and C.  A telemed appointment was scheduled for two weeks after the operation, and instructions were given to return del Castillo to the ER if problems arose.  Exhibit C.

Follow-up examinations occurred on January 30, 2003, and February 18, 2003.  Exhibits D and E.  During both examinations, del Castillo complained that his shoulder still hurt.  *Id*.  On February 6, 2003, del Castillo submitted his first sick request regarding shoulder pain.  Exhibit H.  Although del Castillo complained that earlier complaints about his shoulder had been ignored, there were no prior sick call requests or other records indicating that his petitions for medical treatment or medication had been refused.  When Dr. Hulipas saw del Castillo on February 7, 2003, he ordered an X-ray to determine del Castillo's condition and Tylenol No. 3 to alleviate his pain. Exhibit I.  On February 10, 2003, del Castillo submitted a sick call request seeking access to his medical records and requesting that they be released to a Dr. Nye.  Exhibit J.  The next day, del Castillo submitted a sick call request which contained a complaint about his left shoulder.  Exhibit K.  His specific statement was, "I still have to much pain in my left shoulder that has spread to my shoulder blade. . . very uncomfortable."  Exhibit K.  He then made the following request, "Please extend my med. shower pass until these problems are fixed."  *Id.*  Del Castillo's request was granted and the pass was extended for thirty days.  *Id*.

On February 12, 2003, del Castillo submitted another sick call requesting to see his X-rays before and after his operation.  Exhibit L.  On February 14, 2003, del Castillo submitted a sick call request complaining that he was experiencing great pain and that the Tylenol No. 3 was not helping very much. Exhibit M.  Dr. Hulipas saw him that same day, prescribed additional medication, and scheduled an appointment with the Orthopedics Department.  Exhibit N.  Del Castillo submitted

6

another sick call request on February 16, 2003, this time stating that he was in extreme pain and that he was tired of being ignored. Exhibit O. He received a reply reminding him of his Orthopedics appointment and informing him that the computer records indicated that his pain medication prescription had not expired. *Id*. Dr. Karl Yu of the Orthopedics Department saw Castillo on February 18, 2003, and prescribed more Tylenol No. 3. Exhibit P. On February 18, 2003, del Castillo submitted a sick call request to see his medical records and X-rays. Exhibit Q. In response, he was informed that he was scheduled for another appointment on February 26. *Id.* He submitted another sick call request on February 19, 2003, seeking a renewal of his medications claiming that they had been denied. Exhibit R. Tylenol No. 3 was re-ordered. *Id.*

On February 24, 2003, del Castillo filed a sick call request asking the Health Services Department to provide an explanation for the determination that he was not in pain and asking that the order from the Orthopedics Department be filled. Exhibit S. The answer he received was that the current prescription would not expire until March 9, 2003. On that same day, del Castillo submitted another sick call request demanding an explanation for cessation of his pain medications and inquiring if anyone had looked at his X-rays. Exhibit T. The response given was that the matter was referred to PA Tucker. *Id*. On February 26, 2003, del Castillo submitted another request to see his X-rays, and received a response that he had an appointment the next day to discuss his medications with Dr. Hulipas . Exhibit U. On March 4, 2003, del Castillo submitted a request indicating that a Dr. English had prescribed him Tylenol No. 3 four times daily but that he was only given the medication three times daily. Exhibit V. On March 9, 2003, del Castillo submitted a request for a shower pass which was granted the next day. Exhibit W.

Del Castillo continued to submit medical requests afterward from July 2003 to January 2004; however, only two related to his shoulder. Exhibit X. One request sought a medical appointment

which was granted; the other sought a renewal of a prescription for Ibuprofen which was also granted. *Id*. In addition, del Castillo's medical records reflect that medical staff continued to monitor and treat his shoulder. *See* Exhibit Y. He was seen in May, June, July, August, and September of 2003, and he was allowed to keep his arm immobilized and in a sling. *Id*.

### III. Analysis

Challenges to prison conditions are generally brought under the Eighth Amendment. *Farmer v. Brennan*, 114 S.Ct. 1970, 1976 (1994). The Eighth Amendment prohibits treatment that inflicts wanton and unnecessary infliction of pain upon incarcerated individuals. *Palmer v. Johnson,* 193 F.3d 346 (5th Cir. 1999). Its purpose is to prevent prison conditions that would shock the public conscience. *Porth v. Farrier*, 934 F.2d 154, 157 (8th Cir. 1991); *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). It does not entitle a convicted felon to be free from all discomfort. *Rhodes v. Chapman*, 101 S.Ct. 2392, 2400 (1981). As a prisoner, del Castillo has a right to basic medical treatment when it became apparent that the operation on his clavicle had failed. *Estelle v. Gamble*, 97 S.Ct. 285, 290 (1976). However, there are no guarantees that his ailment would be successfully treated nor does del Castillo have a right to the best treatment available. *Id*.; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991), *citing Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). To prevail in this proceeding, del Castillo must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 97 S.Ct. at 292. It must also be shown that the defendants ignored the malady even though they clearly discerned it. *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). The question remains as to whether there is evidence which shows that the defendants "(1) were aware of facts from which an inference of an excessive risk to [del Castillo's] health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley*, 157 F.3d at 1025, *citing Farmer*. In other

8

words, del Castillo must show that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his serious medical needs. *See Domino v Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

The records submitted in this action undermine del Castillo's claims of deliberate indifference because they clearly show that the defendants responded to his serious medical needs by giving him prescribed medication, monitoring his condition, scheduling him for examinations, and restricted him from certain activities in order to limit the use of his arm. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). *See also Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). In his complaint and response to the defendants' Motion for Summary Judgment, del Castillo argues that he should have been returned to the emergency room at UTMB Galveston pursuant to the surgeon's follow-up care instructions. However, the UTMB Galveston Physician Order Sheet only directs that del Castillo be seen by "TDC Ortho" two weeks after the operation. Exhibit B. The surgery happened on January 16, 2003, and del Castillo's clinic visit took place two weeks later on January 30, 2003. Exhibit D. No other follow visits were required by the surgeon's orders.

Del Castillo also contends that Dr. Hulipas blocked his pain medication; however, there is no affirmative evidence of this. Del Castillo's unsubstantiated assertions are insufficient to prove that Dr. Hulipas prevented him from getting the necessary pain medication. *See, e.g.*, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). At the most, del Castillo shows that there was a disagreement between Dr.Hulipas and other health care regarding the amount of medication and type of treatment that was appropriate for del Castillo.

9

Differences in opinions between doctors concerning medical treatment does not support a constitutional claim. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999) (doctor's failure to follow other doctor's recommendations amounts to nothing more than a difference of opinion). *See also Banuelos*, 41 F.3d at 235, *citing Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (disagreement between prisoner and physician regarding medical care does not establish deliberate indifference absent special circumstances).

The defendants presented evidence clearly demonstrating that there is no genuine issue of dispute regarding del Castillo's medical treatment and that no official was deliberately indifferent to del Castillo's serious medical needs. The motion for summary judgment (Docket Entry 37) shall be granted, and this action shall be dismissed under FED. R. CIV. P. 56.

### IV. Conclusion

The court **ORDERS** the following:

1. The motion for summary judgment (Docket Entry 37) is **GRANTED**.

2. This action is **DISMISSED** with prejudice under FED. R. CIV. P. 56(c).

**SIGNED** on this 14th day of March, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE